UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

             -against-                                 08-cr-0352 (LAK)

JUSTIN BROADBENT,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

                   Kathleen A. Zebrowski
                   Assistant United States Attorney
                   PREET BHARARA
                   UNITED STATES ATTORNEY

                   Lorraine Gauli-Rufo
                   *Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        Justin Broadbent moves for an order declaring that the restitution obligations imposed upon him by his 2008 criminal judgment have been satisfied and for return of funds that he claims he has overpaid.[1]  The government opposes the motion.[2]  For the following reasons, the Court grants Broadbent's motion in part.

---

[1]      DI 56, 60.

[2]      DI 57.

*Facts*

In the period relevant to this case, one Falcetta, then a vice-president of human resources in the life insurance division of American International Group, Inc. ("AIG"), was authorized to approve payment of invoices submitted to AIG from personnel recruitment companies who helped to fill vacant AIG positions.[3]  Falcetta arranged with defendant Broadbent and with two other men, Santone and Pombonyo, for them to submit invoices in the names of their respective companies, charging AIG for services purportedly undertaken in connection with search efforts for employee positions with AIG but that never were performed.[4]

All four – Falcetta, Broadbent, Santone and Pombonyo – were charged with mail fraud and conspiracy to commit mail fraud.[5]  For reasons perhaps known only to the United States Attorney's Office, each was charged in a separate information.  Each case was assigned to a different judge.  Each defendant pled guilty, and each was sentenced by a different judge.[6]  And what is relevant here are the restitution obligations imposed and the payments made by each.

The Probation Office recommended different amounts of restitution in each case and that the restitution obligations be made joint and several.[7]  The assigned judges more or less

---

[3]  Falcetta PSR ¶¶ 13-15.

[4]  *Id.* ¶ 16.

[5]  Falcetta was charged also with one count of money laundering.  DI 29 in 08-cr-327.

[6]  DI 34 in 08-cr-345; DI 41 in 08-cr-326; DI 41 in 08-cr-327.

[7]  Broadbent PSR ¶ 26; Pombonyo PSR ¶ 26; Falcetta PSR ¶¶ 43-46, 49; Santone PSR ¶ 29.

following those recommendations.[8]  The following table illustrates the point.

|  | Case # | Restitution Ordered | Restitution Paid[9] |
|---|---|---|---|
| **Broadbent** | 08-cr-352 | $120,000 | $25,050 |
| **Santone** | 08-cr-345 | $320,594.60 | $5,546.79 |
| **Pombonyo** | 08-cr-326 | $647,886.82 | $325,149.10 |
| **Falcetta** | 08-cr-327 | $1,088,471.40 | $8,095 |

But there were two wrinkles that are material here.

First, Broadbent's restitution obligation was made joint and several with those of the other three individuals but,  significantly,  the judgment provided also that Broadbent's "obligation to make restitution shall cease once the aggregate of the restitution paid" by him and the three other defendants "reaches $120,000."[10]

Second,  the Pombonyo sentencing judge,  subsequent to the Broadbent sentencing, ordered that Pombonyo forfeit $301,386 to the United States and that the government credit that amount toward his restitution obligation.   Pombonyo and the government subsequently complied with this order,  and "[o]n or about February 25, 2010, those funds were paid to the Clerk of the Court and applied toward Pombonyo's restitution obligation."[11]

---

[8]    The Santone and Falcetta restitution obligations were made joint and several with those imposed on the other and with Pombonyo and Broadbent.  The Pombonyo obligation was made joint and several with that of Falcetta.

[9]    The figures in the table reflect the amount paid through the time Broadbent filed the instant motion.

[10]    DI 42, at 7.

[11]    DI 62, at 2.

4

Over the years, Broadbent and the other defendants made, or were credited with having made, the restitution payments indicated above. And, although Broadbent's judgment required that the payments be made to AIG, the docket sheet indicates that he made them to the Clerk of this Court, who presumably remitted them to AIG. But matters became even more complicated.

In early 2010, the Court's cashier noted the large amount that was credited to Pombonyo in consequence of the application of his forfeiture to his restitution obligation and notified the U.S. Attorney's Office that perhaps Broadbent's restitution obligation had ceased by virtue of Pombonyo's forfeiture and that Broadbent had overpaid. The cashier indicated his intention to release Broadbent from the judgment's restitution obligations and refund him certain overpayments.[12] The government disagreed and submitted a letter in December 2010, which explained its interpretation of the overlapping restitution obligations in this case and its consequent disagreement with the cashier.[13] The government's letter did not quote the portion of Broadbent's judgment where the Court ordered that "the defendant's obligation to make restitution shall cease once the aggregate of the restitution paid by the defendant [and the other three defendants] reaches $120,000." Broadbent made no submission on the issue and the Court endorsed the government's letter.

More than five years later, Broadbent now challenges the government's interpretation of the restitution portion of his judgment. Broadbent contends that, under its plain language, his restitution obligations were satisfied when the government credited the $301,386 forfeiture payment

---

[12]    DI 50, at 2.

[13]    *Id.*

5

by Pombonyo to Pombonyo's restitution obligation.  He seeks an order declaring his restitution obligations satisfied and a refund of the payments made after the credit of Pombonyo's forfeiture to his restitution obligation.[14]

*Discussion*

I.        *The* Pombonyo *Judgment Provision Crediting His Forfeiture to His Restitution Obligation Was* Ultra Vires

In assessing Broadbent's motion, the Court discerned that the Pombonyo judgment provision that ordered the government to treat forfeited funds as a restitution payment may have been erroneous.  At the request of the Court, the parties submitted their views on the matter.[15]  As the government noted in its submission,[16] the circuits to have considered the issue are in uniform agreement that district courts must set forfeiture and restitution amounts independently in cases, like this one, that fall under the Mandatory Victim Restitution Act ("MVRA") and may not order the government to credit one against the other at the time of sentencing.[17]  Rather, the decision to remit forfeited funds to victims as restitution remains in the government's sole discretion.[18]

---

[14]
 DI 56, at 4.

[15]
 DI 68, 70.

[16]
 DI 70, at 1-4.

[17]
 *See, e.g.*, *United States v. Joseph*, 743 F.3d 1350, 1353-56 (11th Cir. 2014); *United Sates v. Bright*, 353 F.3d 1114, 1120-23 (9th Cir. 2004).

[18]
 *See* 18 U.S.C. § 981(d); *Joseph*, 743 F.3d at 1355.

Broadbent attempts to distinguish *Joseph* on the basis that the government in Pombonyo's case acquiesced to transferring the forfeited funds to the victim.  DI 68, at 2.  In so doing,

In view of *Bright* and like cases, the government was under no obligation to remit to AIG the funds that Pombonyo forfeited.  But the government has represented to the Court that it has done so.[19]   As a result, and in order to avoid overpaying AIG, the outstanding amount of restitution for which the four defendants are jointly and severally liable must be reduced by the amount that the government remitted.[20]   The upshot is that the Court now must consider Broadbent's motion in light of the undisputed fact that Pombonyo had paid $325,149.10 in restitution to AIG by the time Broadbent filed his motion.[21]   The fact that the government could have appealed from or otherwise challenged the Pombonyo judgment to the extent it required that the government credit Pombonyo's forfeiture amount to his restitution obligation does not factor into the analysis.

II.          *Under the Hybrid Approach to Restitution, Pombonyo's Restitution Payment Ordinarily Would Not Have Satisfied Broadbent's Individual Obligation*

In MVRA cases, the district court must order restitution in an amount that would

---

he avoids the question the Court actually posed – whether the Pombonyo court properly ordered the transfer in the first instance.  The potential consequences for Broadbent of the government's acquiescence to an *ultra vires* order in Pombonyo's case is an entirely separate question that the Court addresses below.

[19]

*See* DI 70, at 4 (stating that, in Pombonyo's case, "the Attorney General did exercise its discretion to provide restoration to victims and credited the forfeiture payments to the defendant's restitution obligations").

[20]

*See, e.g.*, *United States v. Klein*, 476 F.3d 111, 114 (2d Cir. 2007).

[21]

To the extent the government argues that the $301,386 Pombonyo paid in satisfaction of his forfeiture judgment, and which the government credited towards his restitution obligation, does not qualify as a restitution payment for the purposes of this motion, the Court rejects that position.  The government has informed the Court that AIG received those funds.  As a result, that payment constitutes a restitution payment for all relevant intents and purposes.

compensate victims fully.[22]   The court, however, retains discretion in multi-defendant cases to allocate restitution among defendants.  It may do so according to their relative culpability, or may hold all defendants jointly and severally liable for the entire loss.[23]   Alternatively, a court may take a "hybrid approach" by assigning each defendant a separate restitution obligation while also holding each jointly and severally liable.[24]   Under the hybrid approach, the individual amounts owed by co-defendants may amount to more than the victim's loss.[25]   In that case, courts will read into the judgments a term that the collective obligations must be "adjusted to prevent" the victim from being over-compensated.[26]

Although it is fairly common, the hybrid approach presents some tricky issues regarding restitution calculations.  Here, for example, the government and Broadbent interpret the overlapping restitution orders in very different ways.   Broadbent conceives of the restitution judgments like rungs on a ladder.  Starting at the moment judgment is entered, the government, in his view, may collect from any of the four defendants until the total amount that AIG receives from

---

[22]

18 U.S.C. § 3664(f)(1)(A); *United States v. Reifler*, 446 F.3d 65, 134 (2d Cir. 2006).

[23]

*See, e.g.*, *United States v. Washington*, 408 F. App'x 458, 460 (2d Cir. 2011).

[24]

*See United States v. Sheets*, 814 F.3d 256, 260-62 (5th Cir. 2016) (coining the term "hybrid approach"); *United States v. Nucci*, 364 F.3d 419, 423-24 (2d Cir. 2004) (affirming restitution orders featuring such a scheme).

[25]

The instant case serves as an example.  Here, AIG lost a total of $1,088,471.  The sum of the individual restitution orders in the four judgments is double that amount.  Although none of the judgments states that AIG may not receive more than $1,088,471, courts must impose such a term to prevent over-compensation.

[26]

*Klein*, 476 F.3d at 114; *see United States v. Trigg*, 119 F.3d 493, 501 (7th Cir. 1997) ("Of course, even when joint and several liability is imposed, victims may not recover an amount in excess of their loss.").

8

all sources reaches $120,000.  According to Broadbent, at that time he is excused from further payment regardless of how much he contributed to the $120,000 paid to that point.  The government then may collect from the other three defendants until AIG has received $320,594 – the amount in Santone's judgment – at which point, Santone would be excused from further payments.  This continues until only Falcetta – whose personal restitution obligations reflect the entire loss amount – remains liable.

　　　　　While Broadbent's argument is plausible, it is not how courts have enforced restitution collection under the hybrid approach.  The Fifth Circuit recently rejected precisely this argument in *Sheets*.  The court stated the rule this way:

> "[E]ven where liability of each defendant overlaps and the total amount that they are held liable for exceeds the victim's total injury, the MVRA permits the [g]overnment to hold any individual defendant liable for as much as the court ordered as to that defendant, but the government may not collect more from all the defendants together than will make the victim whole."[27]

Under the *Sheets* approach, the government may continue to collect from Broadbent until he personally has paid the $120,000 under his criminal judgment, subject of course to the limitation that AIG may not receive more than the $1,088,471 it lost overall.  Accordingly, Broadbent would not get "credit" for his co-defendants' payments.

　　　　　The Court concludes that the *Sheets* approach is the correct one in cases where a court orders restitution under the hybrid approach.[28]  Broadbent's contrary theory finds no support in the

---

[27]

　　　　814 F.3d at 261.

[28]

　　　　The government does not cite *Sheets*, *Nucci*, or like cases, but appears to concur in their approach to restitution calculations, or at least its application to this case.  *See* DI 57, at 3 (asserting that the government "is entitled to collect the full amount that each defendant has been ordered to pay, with the caveat that the victim not be paid mor[e] tha[n] its loss").

9

case law and would restrict the government's ability to collect restitution in a way that would defeat the purpose of holding the defendants jointly and severally liable.

Despite the general failure of Broadbent's theory of restitution, he correctly points out that the judgment in this case departs from the hybrid approach.

III.     *The Plain Language of Broadbent's Judgment Departs from the Hybrid Approach, Relieving Him of Continuing Restitution Obligations*

The Probation Office here adopted the hybrid approach to restitution by recommending in the Presentence Investigation Reports ("PSRs") for each of the four defendants that they be held jointly and severally liable while also assigning different, overlapping amounts to each defendant.   But the PSRs were incomplete in a way that led to confusion at sentencing. Notably, Broadbent's PSR contained no mention of the total dollar amount of loss that resulted from the charged conspiracy.   Under the heading "victim impact" it reads: "According to information provided by the Government, AIG incurred an actual loss of approximately $120,000, as a result of Broadbent's participation in the instant offense.   Broadbent is jointly and severally responsible for restitution in that amount, along with his co-conspirators."[29]   In order to understand that AIG lost more than $120,000, or to grasp the overlapping restitution scheme that Probation had in mind, one would have had to have read all four PSRs together.   Because each defendant was sentenced before a different district court judge relying on separate PSRs that did not provide the full picture, this likely did not occur.[30]

---

[29]     Broadbent PSR ¶ 26.

[30]     The informations filed in each case were similarly siloed, providing in Broadbent's case only allegations regarding the transactions in which he personally was involved.  DI 32.

Broadbent's judgment reflects this confusion by relieving him of restitution obligations when the aggregate amount paid by his co-defendants reached $120,000. That would have made sense if the $120,000 was the total amount AIG lost due to the conspiracy because it would have avoided over-recovery. But it would thwart the intended hybrid approach in this instance by letting one of the defendants off the hook before he personally had paid the amount allocated to him. If the judgment did not contain the statement that Broadbent's "obligation to make restitution shall cease once the aggregate of the restitution paid by the defendant [and the other three defendants] reaches $120,000," then Broadbent would remain liable under the *Sheets* approach until he personally had paid $120,000 or until AIG was completely compensated.

Broadbent argues that the language in the judgment unambiguously relieves him of his obligation to pay once he and his co-defendants have paid an aggregate amount of $120,000. The Court agrees that the language is "clear on its face, even if not reflective of the court's actual intent."[31] The ambiguity arises only after looking beyond the judgment in Broadbent's case to the PSRs and judgments of the other defendants, which is insufficient reason to upset the judgment.[32] According to the government's calculations, AIG had received an aggregate of $363,840.89 from the four defendants as of the date Broadbent filed this motion.[33] In consequence, the plain language of the judgment in this case relieves Broadbent of continuing restitution obligations. This is true despite the fact that the judgment unquestionably does not represent the intent of the Court at sentencing.

---

[31]     *United States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005).

[32]     *See id.*

[33]     DI 57, at 2.

It is true also that Broadbent stands to receive a windfall due to one or more errors at sentencings combined with the Probation Office's failure to provide at least some of the sentencing judges the entire picture with respect to AIG's loss.  The government, however, offers no persuasive arguments for its position.  First, the government did not object when the Court stated orally at sentencing that Broadbent's obligation to make restitution would cease once the aggregate of the restitution paid by him and the other defendants reached $120,000, despite being the party best positioned to spot the error.  Now the government faults Broadbent for relying "solely" on that portion of the judgment, but makes no attempt to explain why that clear statement should not control.[34]  Rather, the government cites only general principles of joint and several liability while failing to cite *Sheets*, *Nucci* or other cases describing the hybrid approach despite their obvious relevance.  In short, while the equities of this case tilt decidedly against Broadbent, the law is in his favor.

Finally, there is the question of what, if anything, should be done about the money Broadbent claims he overpaid.

The government urges the Court to order these funds be applied to Broadbent's outstanding forfeiture judgment.  The Court declines this invitation.  As the government itself argued before the Court, restitution and forfeiture are authorized by separate statutes and serve distinct purposes.  The government, of course, may continue to collect any outstanding amounts on Broadbent's forfeiture judgment, which is not the subject of the instant motion and remains in force.

The Court will deny also Broadbent's request for a refund.  Putting aside the issue of whether the Court properly may order the return of restitution payments disbursed to a victim that

---

[34]     *Id.*

12

has yet to be compensated fully, Broadbent has provided insufficient factual support for his request. In particular, neither Broadbent nor the government has identified when the aggregate restitution payments for the four defendants reached $120,000, when the restitution payments were deposited with the Clerk of Court, or when AIG received the funds. In light of Broadbent's failure to marshal any legal or factual support for this aspect of the instant motion, the Court will not order a refund of restitution payments previously made to AIG.

*Conclusion*

The Court grants Broadbent's motion [DI 56] to the extent he seeks an order declaring that the restitution obligations associated with his 2008 criminal judgment have been satisfied. The motion is denied in all other respects.

SO ORDERED.

Dated:          December 22, 2016

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)